UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**SUSAN YEAGER,**

    **Plaintiff,**

vs.                                                                      Case No.:  5:13-cv-173-OC-10PRL

**ERIC K. SHINSEKI, SECRETARY,**
**DEPARTMENT OF VETERANS AFFAIRS,**

    **Defendant.**
_____/

**AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**
**<u>INJUNCTIVE RELIEF REQUESTED</u>**

Plaintiff, Susan Yeager, complains of Defendant, Eric K. Shinseki, Secretary, Department of Veterans Affairs ("Secretary"), as follows:

**<u>JURISDICTION</u>**

1. This court has jurisdiction of the claims in this complaint pursuant to Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e *et seq.* and 28 U.S.C. § 1331.

2. Plaintiff has complied with all jurisdictional prerequisites to action under Title VII, including having exhausted or being excused of any required administrative remedies.

**<u>PARTIES</u>**

3. North Florida/Southern Georgia Veterans Health System ("NFSG") is an integrated healthcare system within the Department of Veterans Affairs ("VA") comprised of various medical centers and many community based outpatient clinics located in Florida and Georgia, including The Villages Outpatient Clinic ("Villages") in Florida.  Each of the employees of the VA described herein was employed by the Defendant or NFSG and was acting

within the course and scope of his or her employment with the Defendant or NFSG at the time of the conduct described herein.

4. Dr. Susan Yeager, a resident of a community called The Villages, Florida, is employed by the VA and is a podiatrist and surgeon at the Villages. She has held this position since January, 2011 and has worked for the VA since 2002. At all relevant times, Dr. Yeager's first-line supervisors were Dr. Richard Cummings and then Dr. Kenneth Donahoe, who were Chief Medical Officers at the Villages, and then Dr. Nina Camperlengo who is the acting Chief Medical Officer. At all relevant times, Dr. Bradley Bender was Chief of Staff of NFSG and Mr. Thomas Cappello and Mr. Thomas Wisnieski were Directors of NFSG. Dr. Yeager is a female.

## GENERAL ALLEGATIONS

5. From approximately January 1, 2011 to the present, Dr. Yeager was paid less than her male counterparts.

6. Although Dr. Yeager was brought to the Villages to perform surgery, she was not provided the opportunity to perform surgery. Since at least April, 2011, male physicians have been allowed to perform surgery or surgical procedures (i.e. colonoscopy for one of the physicians) at the Gainesville VA Medical Center. Dr. Yeager was told on or about August 14, 2011, that she would not be provided the same or similar surgical opportunities even though she has surgical privileges.

7. Beginning on or about August 1, 2011, and continuing thereafter, Dr. Yeager's clinics and notes have been looked at and reviewed while other male counterparts have not had their clinics and notes looked at and reviewed.

8. Beginning on or about August 8, 2011, Dr. Yeager was the only person required to run two side-by-side clinics, which her male counterparts were not required to do.

9. Beginning on or about August 8, 2011, Dr. Yeager had to run to clinics and go without lunch and breaks, and was yelled at on occasion.

10. After Dr. Yeager complained about the conduct and omissions against her in paragraphs 6 and 8, she was informed on or about August 22, 2011, that her surgical privileges were taken away.

11. Beginning on or about August 22, 2011, various patients were improperly informed of purported problems regarding Dr. Yeager's privileges.

12. On or about September 19, 2011, a note or comment was improperly placed in the official electronic medical record ("CPRS") that Dr. Yeager's privileges were in question.

13. After Dr. Yeager complained about the conduct and omissions against her in paragraphs 6 and 8, she was given four clinics to run on or about September 30, 2011. None of Dr. Yeager's male counterparts were required to run four clinics.

14. On or about September 30, 2011, the Acting Administrative Officer at the Villages abruptly and disrespectfully changed Dr. Yeager's clinics without consulting or telling Dr. Yeager in advance.

15. Beginning in or about October, 2011, and continuing thereafter, Dr. Donahoe frequently asked Dr. Yeager out on dates. These requests were unwelcome and Dr. Yeager declined all such requests.

16. Beginning in or about October, 2011 and continuing thereafter, Dr. Donahoe frequently gawked at and looked at Dr. Yeager up and down when they met at work.

17. On or about October 28, 2011, Dr. Yeager received a proficiency report that was primarily high satisfactory rather than outstanding because of the failure of the VA to provide her surgical opportunities which were provided to other male physicians.

18. In a continuing course of conduct beginning in January, 2012, Dr. Donahoe failed to provide or delayed providing Dr. Yeager with equipment needed for her employment, including, *inter alia*, an eye wash station, eye protection, masks, suction equipment, an adequately maintained sharps box, shoe covers, hand sanitizer, lab coats, paper towels, a doormat and phones.

19. Beginning in or about January, 2012, Dr. Yeager requested administrative time like other providers to complete work on charts, notes, and other matters, which was not granted.

20. By letter dated January 10, 2012 (misdated as 2011), the Department of Veterans Affairs refused to provide Dr. Yeager with the opportunity to perform surgical services at the Orlando VA Medical Center although the VA had no reason to not make this opportunity available to her and indicated that it had no reason to not make this opportunity available to her. The VA basically took the position that the VA would only provide her with this opportunity if she gave up the claims she had made in an EEO complaint.

21. On or about January 10, 2012, Dr. Yeager was denied Executive Career Field training.

22. On or about March 6, 2012, Dr. Donahoe spoke with union officials at the Villages about Dr. Yeager and commented he did not know what Dr. Yeager was doing and made a gesture with his hand like she was crazy.

23. On July 10, 2102, and before, Surgical Service Assistant Chief Roger Beck unnecessarily sent Dr. Yeager emails questioning her whereabouts. After Dr. Yeager advised Dr. Donahoe of this behavior, Dr. Donahoe took no action.

24. On or about August 20, 2012, Michelle Baker, the Administrative Officer at the Villages, came up behind Dr. Yeager as Dr. Yeager was talking to a coworker and made a

gesture like she was hanging herself with her name tag.

25. As a result of not having proper eye protection, on September 7, 2012, Dr. Yeager injured her eye on the job while conducting a procedure. Dr. Donahoe delayed the paperwork concerning Dr. Yeager's injury, which prevented her from going to an eye doctor to have a procedure to correct her eye issue.

26. In or about October, 2012, Dr. Donahoe caused chart reviews to be done with respect to patients to whom Dr. Yeager provided care.

27. Dr. Donahoe caused Dr. Yeager's clinical privileges to be improperly suspended or put on hold on or about November 19, 2012. All of her clinics were cancelled, she remained at work seeing no patients from 8:00 a.m. to 4:30 p.m. and her access to CPRS was also removed. Moreover, Dr. Donahoe did not provide Dr. Yeager with appropriate notice of the suspension in an effort to prevent Dr. Yeager from defending herself.

28. On or about December 14, 2012, Dr. Yeager was informed that she would be subject to a "Focused Professional Practice Evaluation." On information and belief, Dr. Donahoe caused her to be subject to such an evaluation.

29. On or about December 18, 2012, while Dr. Yeager was speaking to a group, Dr. Donahoe stared at Dr. Yeager's breasts.

30. On or about January 18, 2013, Dr. Yeager was informed that she would have chart reviews performed over a four week period on patients for whom she provided care. On information and belief this was caused by Dr. Donahoe.

31. Dr. Yeager requested that she be protected from Dr. Donahoe, but her request was denied.

32. In or about February, 2013, someone in management targeted her and made

inappropriate allegations that she was practicing outside of her authorized privileges and state licensure. As a result of the aforesaid allegations against Dr. Yeager, an Administrative Investigation Board ("AIB") was convened and Dr. Yeager was required to give testimony before the AIB in late March, 2013. The AIB was not impartial or properly trained. One of the AIB members had previously harassed Dr. Yeager. Dr. Yeager had previously complained about this harassment as well as about a medical case involving this AIB member. Although Dr. Yeager complained that the AIB member was not impartial, neither he nor the other AIB members were recused or replaced

33. Dr. Yeager objected to various acts of harassment and discrete acts of discrimination and reprisal to several management officials including to Dr. Bradley Bender, Dr. Cummings, Dr. Maclindong, Dr. Loza and Jesse Oswatt.

34. Dr. Yeager contacted the VA Office of Resolution Management ("ORM") on several occasions regarding the harassment or hostile work environment and discrete acts of discrimination and reprisal.

35. On or about December 16, 2011, Dr. Yeager filed a formal complaint, which was subsequently amended, with the ORM (Case No. 200I-0573-2011104799).

36. On or about April 24, 2012, Dr. Yeager filed a formal complaint, which was subsequently amended, with the ORM (Case No. 200I-0573-2012102242).

37. On or about January 28, 2013, Dr. Yeager filed a formal complaint, which was subsequently amended, with the ORM (Case No. 200I-0573-2013100247).

38. Someone in management improperly targeted Dr. Yeager and made inappropriate allegations that she was practicing outside of her authorized privileges and state licensure. As a result of the aforementioned allegations against Dr. Yeager, an Administrative Investigative

Board ("AIB") was convened and Dr. Yeager was required to give testimony before the AIB in late March, 2013. The AIB was not impartial or properly trained. One of the AIB members had previously harassed Dr. Yeager. Dr. Yeager had previously complained about this harassment as well as about a medical case involving this AIB member. Although Dr. Yeager complained that the AIB member was not impartial, neither he nor the other AIB members were recused or replaced.

39. In late March, 2013, Dr. Yeager received a privileges renewal package that only provided for renewal of her privileges for 6 months rather than the usual two years.

40. By memorandum dated April 18, 2013, Dr Yeager was improperly told that she was considered absent without official leave for the period April 1 through April 5, 2103 although permission for that time had been approved by the appropriate official.

41. By memorandum dated May 14, 2013, Dr. Yeager was detailed out of her duties as a Podiatrist and away from patient care to perform administrative, non-patient care functions.

### Count I
### (Discrimination based on sex)

42. Plaintiff, Susan Yeager, sues Eric K. Shinseki, as Secretary of the Department of Veterans Affairs for discrimination based on sex under Title VII.

43. Plaintiff incorporates and realleges paragraphs 1 through 41.

44. As a direct and proximate result of the foregoing conduct, Plaintiff has been denied equal employment opportunity for wages, promotion, and other terms and conditions of employment by the Defendant because of sex (female).

45. The above discriminatory actions were taken by the supervisory personnel within the VA in order to deprive the Plaintiff of employment and other employment action because of her sex.

46. The Defendant has intentionally maintained these discriminatory and unlawful practices to the detriment of the Plaintiff.

47. The Defendant at all relevant times knew, or should have known, of the above-referenced discrimination against the Plaintiff.

48. The Defendant has failed to take necessary action to prevent or correct the complaint of discrimination and, in fact, ratified such conduct.

49. The Defendant, through the Plaintiff's managers and supervisors has engaged in, directed or ratified conduct and denied and frustrated the Plaintiff's efforts to obtain relief under Title VII.

50. The Defendant, through acceptance of the complained of conduct, has fostered an attitude among supervisors within the NFSG that discrimination based on sex is an acceptable employment practice.

51. Because of the willful actions of the Defendant and its administrators, managers and supervisors, and as a proximate cause thereof, the Plaintiff has been and continues to be denied her rights to equal employment opportunity in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

52. As a result of the foregoing, the Plaintiff has been damaged. Those damages include, but are not limited to loss of pay; loss of benefits; loss of an amicable working environment; loss of career and professional opportunities; payment of attorneys' fees and legal costs; harm to professional reputation; and humiliation, anxiety, degradation, embarrassment, and severe emotional suffering and distress. Plaintiff will continue in the future to suffer these damages absent relief from this Court.

53. Plaintiff has satisfied all conditions precedent to filing of this suit or has been

prevented by the Defendant from satisfying such conditions precedent or is excused under the law from satisfying any other conditions.

WHEREFORE, Plaintiff requests prospective relief, judgment for damages, attorneys' fees and costs, and such other relief as this Court deems just and proper and for a trial by jury on all issues so triable.

## Count II
### (Hostile Work Environment based on sex)

54. Plaintiff, Susan Yeager, sues Eric K. Shinseki, as the Secretary of Veterans Affairs, for hostile work environment based on sex.

55. Plaintiff incorporates and realleges paragraphs 1 through 41 and 44 through 53.

56. The aforesaid actions and conduct have created an intolerable hostile work environment.

57. As a result of the foregoing, Plaintiff has been damaged. Such damages include, but are not limited to payment of attorneys' fees and legal costs; loss of an amicable work environment; harm to professional reputation; humiliation, anxiety, degradation, embarrassment, physical injury or illness, and severe emotional suffering and distress. Plaintiff will continue in the future to suffer the same damages absent relief from this Court.

58. Plaintiff has satisfied all conditions precedent to the filing of this suit or has been prevented by the Defendant from satisfying such conditions or is excused under the law from satisfying any other conditions.

WHEREFORE, Plaintiff requests prospective relief, judgment for damages, attorneys' fees and costs and such other and further relief as this Court deems just and proper and for a trial by jury on all issues so triable.

## Count III
## (Retaliation)

59.     Plaintiff, Susan Yeager, sues Eric K. Shinseki, as the Secretary of Veterans Affairs, for retaliation under Title VII.

60.     Plaintiff incorporates and realleges paragraphs 1 through 41.

61.     Plaintiff engaged in EEO activity which is protected under Title VII.

62.     The Defendant was aware of each of the Plaintiff's protected or EEO activities under Title VII.

63.     The aforesaid adverse employment actions, adverse actions, misconduct and omissions; and other actions, conduct, and omissions to the Plaintiff's detriment were all taken (or failed to be taken) by administrators and managing and supervisory personnel with the NFSG in retaliation for the protected or EEO activity of the Plaintiff.

64.     As a direct and proximate result of protected or EEO activity, Plaintiff has suffered adverse employment actions and other adverse actions, including, *inter alia,* those set forth above.

65.     NFSG has intentionally maintained retaliatory and unlawful practices to the detriment of its employees.

66.     The Defendant at all relevant times knew or should have known of the retaliatory actions being taken against the Plaintiff.

67.     The Defendant failed to take necessary action to prevent or correct the retaliatory actions being taken and, in fact, ratified such conduct.

68.     The Defendant, through the supervisors, managers and administrators of the Plaintiff, has engaged in, directed, and/or ratified retaliatory conduct and has frustrated the Plaintiff's efforts to obtain relief under Title VII.

69.     The Defendant, through acceptance of such conduct, has fostered an attitude among administrators, managers and supervisors at the NFSG that retaliation against employees in order to discourage protected EEO activity is an acceptable employment practice by administrators, managers and supervisors at NFSG.

70.     Because of the willful actions of the Defendant and its administrators, managers and supervisors, and as a proximate cause thereof, Plaintiff has been and continues to be denied her right to equal employment opportunity in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*.

71.     As a result of the foregoing, Plaintiff has been damaged. Such damages include, but are not limited to loss of pay; loss of benefits; payment of attorneys' fees and legal costs; loss of an amicable work environment; loss of career and professional opportunities; harm to professional reputation; and humiliation, anxiety, degradation, embarrassment, and severe emotional suffering and distress. Plaintiff will continue in the future to suffer the same damages absent relief from this Court.

72.     Plaintiff has satisfied all conditions precedent to the filing of this suit or has been prevented by the Defendant from satisfying such conditions or is excused under the law from satisfying any other conditions.

WHEREFORE, Plaintiff requests prospective relief, judgment for damages, attorneys' fees and costs and such other and further relief as this Court deems just and proper and for a trial by jury on all issues so triable.

### Count IV
### (Retaliatory Hostile Work Environment)

73.     Plaintiff, Susan Yeager, sues Eric K. Shinseki, as the Secretary of Veterans Affairs, for retaliatory hostile work environment.

74. Plaintiff incorporates and realleges paragraphs 1 through 41 and 61 through 72.

75. The aforesaid actions and conduct have created an intolerable hostile work environment.

76. As a result of the foregoing, Plaintiff has been damaged. Such damages include, but are not limited to payment of attorneys' fees and legal costs; loss of an amicable work environment; harm to professional reputation; humiliation, anxiety, degradation, embarrassment, physical injury or illness, and severe emotional suffering and distress. Plaintiff will continue in the future to suffer the same damages absent relief from this Court.

77. Plaintiff has satisfied all conditions precedent to the filing of this suit or has been prevented by the Defendant from satisfying such conditions or is excused under the law from satisfying any other conditions.

WHEREFORE, Plaintiff requests prospective relief, judgment for damages, attorneys' fees and costs and such other and further relief as this Court deems just and proper and for a trial by jury on all issues so triable.

## Count V
### (Injunctive Relief)

78. Plaintiff, Susan Yeager, sues Defendant Eric K. Shinseki, as Secretary of the Department of Veterans Affairs.

79. Plaintiff incorporates and realleges paragraphs 1 through 77.

80. Unless the above practices are enjoined, Plaintiff will suffer irreparable harm.

81. There is: (1) a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless an injunction issues; (3) the threatened injury to the Plaintiff is greater than any damage the proposed injunction may cause the opposing party; and (4) the

injunction, is issued, will not disserve the public interest.

82. Plaintiff requests the Court award her attorneys' fees and costs and enter preliminary and permanent injunctions enjoining the following practices, actions and conduct:

a. Violating Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,* as described above including retaliation against Plaintiff for protected or EEO activity and discrimination based on sex.

b. Such other practices, actions or conduct that the court deems appropriate and proper to enjoin.

WHEREFORE, Plaintiff demands trial by jury of all issues so triable and such other and further relief as the Court deems just and appropriate.

### DEMAND FOR JURY TRIAL

Plaintiff, Susan Yeager, hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

S/Ward A. Meythaler
Ward A. Meythaler
Florida Bar No.: 0832723
Merkle Magri & Meythaler, P.A.
5601 Mariner St., Suite 400
Tampa, FL 33609
Tel. (813) 281-9000
Fax.: (813) 281-2223
Email: wamsecy@merklemagri.com